UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------- X
KEVIN and SUSAN LEWIS, on behalf
of themselves and all others                    **MEMORANDUM & ORDER**
similarly situated,

                         Plaintiffs,            14-CV-1779 (KAM)

v.
                                         X
DELAWARE CHARTER GUARANTEE & TRUST
COMPANY d/b/a PRINCIPAL TRUST
COMPANY, PRINCIPAL FINANCIAL
GROUP, INC., and DAVID LERNER
ASSOCIATES, INC.,

                         Defendants.

----------------------------------

**MATSUMOTO, United States District Judge:**

        Putative class plaintiffs Kevin and Susan Lewis

("Plaintiffs") commenced this class action on behalf of

themselves and others similarly situated against defendants

alleging common law claims of breach of contract, breach of

trust, breach of fiduciary duty, negligence, and intentional and

negligent misrepresentation.  (*See generally*, Corrected Class

Action Complaint ("Complaint" or "Compl."), ECF No. 17.)

        Presently before the court are two motions to dismiss

by (1) defendant Delaware Charter Guarantee & Trust Company

d/b/a Principal Trust Company ("Principal Trust") and (2)

defendant David Lerner Associates, Inc. ("DLA") (collectively,

the "Defendants").[1] (*See* Def. Delaware Charter Guarantee & Trust

Co. d/b/a Principal Trust Co. Mem. of Law in Supp. of Its Mot.

to Dismiss ("Principal Trust Mot."), ECF No. 126; Mem. of Law of

David Lerner Associates, Inc. in Supp. of Mot. to Dismiss Compl.

("DLA Mot."), ECF No. 117.) For the reasons set forth below,

Principal Trust's motion to dismiss the Complaint is granted in

part and denied in part.  DLA's motion to dismiss the Complaint

is granted in its entirety.

## BACKGROUND

### I.  Procedural History

On October 2, 2013, Plaintiffs filed a complaint in

the United States District Court for the District of Nevada.

(*See* Complaint, ECF No. 1.)  Plaintiffs filed an amended

complaint on October 30, 2013, which is the operative complaint

in this action.  (*See* Compl., ECF No. 17.)  On December 20,

2013, DLA moved to transfer the instant case to the United

States District Court for the Eastern District of New York.

(*See* Mot. to Transfer, ECF No. 33.)  On March 17, 2014,

Magistrate Judge George Foley, Jr. granted DLA's motion to

transfer.

---

[1] The court dismissed Principal Financial Group, Inc. from this action
pursuant to Plaintiff's notice of voluntary dismissal. (*See* Order Dismissing
Parties dated 4/28/2014; Notice of Voluntary Dismissal, ECF No. 103.)

## II.  **Plaintiffs' Allegations**

Plaintiffs are residents of Nevada who entered into Self-Directed Individual Retirement Trust Agreements ("SIRTA") to establish individual retirement accounts ("IRAs") with Principal Trust, a corporation organized under the laws of Delaware with its principal place of business in Wilmington, Delaware.  (*see* Compl. ¶¶ 5-6, 8, 15.)  The SIRTAs allegedly are standardized form contracts drafted by Principal Trust. (*Id.* ¶ 15.)  The IRAs are organized under § 408 of the Internal Revenue Code ("IRC").  (*Id.* ¶¶ 14, 18.)

As part of their IRAs, Plaintiffs directed investment in one or more Apple REITs, including but not limited to, Apple REITs Six, Seven, Eight, Nine, and Ten (collectively, the "Apple REITs").[2]  (*See id.* ¶ 15.)  Real estate investment trusts ("REITs") are securities that invest in real estate, primarily hotels.  (*See id.* ¶ 16.)

---

[2] The Apple REITs and DLA are defendants in a separate, unrelated case that is before this court.  By Memorandum and Order dated April 3, 2013, this court dismissed plaintiffs' claims against the Apple REITs and DLA. *See In re Apple REITs Litig.*, No. 11-cv-2919, 2013 WL 1386202 (E.D.N.Y. Apr. 3, 2013). Plaintiffs appealed the court's April 3, 2013 order.  The Second Circuit affirmed the court's decision to dismiss Plaintiffs' claims under federal securities laws on the grounds that Plaintiffs failed to identify any actionable misstatements or omissions.  *See In re Apple REITs Litig.*, 563 F. App'x. 81 (2d Cir. 2014).  The Second Circuit vacated the court's decision to dismiss Plaintiffs' claims under common law breach of fiduciary duty and aiding and abetting the alleged breach of fiduciary duty and negligence, finding that the plaintiffs adequately alleged a cognizable loss, and remanded for further proceedings. *Id.*

Plaintiffs allege that, pursuant to the SIRTA, Principal Trust had a duty to "render an accounting, valuing the [Apple REITs] at fair market value" within 90 days following the close of each year and to provide such reports as "prescribed by the Commissioner of Internal Revenue". (*Id.* ¶¶ 22, 33.) Plaintiffs allege that, despite paying "Trustee Fees" to Principal Trust, it "failed to provide the required valuations for many years," and in some years reported "Not Priced" or "Unpriced," and in other years reported the price that investors paid for the Apple REIT units, which did not represent "a current market value." (*Id.* ¶¶ 19, 25-26.)

Pursuant to the SIRTA, Plaintiffs allege that brokerage accounts for the IRAs were opened with DLA. (*Id.* ¶ 20.) DLA is a New York corporation with its corporate headquarters in Syosset, New York. (*Id.* ¶ 9.) Plaintiffs allege that DLA, as the named "Brokerage Firm" in the SIRTA, "is the custodian of Plaintiffs' and the Class Members' IRA trust assets." (*Id.* ¶ 20.)

Plaintiffs also seek to represent "a class defined as all persons in the United States who invested in any kind of IRA that included the Apple REITs where Principal Trust was the Trustee and the account was opened and maintained by Defendant DLA." (*Id.* ¶ 34.)

Plaintiffs' Complaint asserts the following claims:

1) Breach of contract against Principal Trust (*id.* ¶¶ 45-50);

2) Breach of trust against Principal Trust (*id.* ¶¶ 51-55);

3) Breach of fiduciary duty against Principal Trust (*id.* ¶¶ 56-64);

4) Breach of fiduciary duty against DLA (*id.* ¶¶ 65-69);

5) Aiding and abetting breach of fiduciary duty against DLA (*id.* ¶¶ 70-75);

6) Negligence against Principal Trust and DLA (*id.* ¶¶ 76-81);

7) Intentional misrepresentation against Principal Trust and DLA (*id.* ¶¶ 82-90);

8) Negligent misrepresentation against Principal Trust and DLA (*id.* ¶¶ 91-98).

## DISCUSSION

## I.   Standard for Motion to Dismiss Pursuant to Rule 12(b)(6)

Rule 12(b)(6) provides for the dismissal of a cause of action if plaintiff's complaint fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  In order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  To determine whether a complaint states a plausible claim for relief, the Supreme Court has suggested a "'two-pronged approach.'" *Hayden v. Paterson*, 594

F.3d 150, 161 (2d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679).

First, a court should begin "by identifying pleadings that,
because they are no more than conclusions, are not entitled to
the assumption of truth." *Iqbal*, 556 U.S. at 679 ("While legal
conclusions can provide the framework of a complaint, they must
be supported by factual allegations."). Second, "[w]hen there
are well-pleaded factual allegations, a court should assume
their veracity and then determine whether they plausibly give
rise to an entitlement to relief." *Id.*

The plausibility determination is "a context-specific
task that requires the reviewing court to draw on its judicial
experience and common sense." *Id.* A claim is plausible "when
the plaintiff pleads factual content that allows the court to
draw the reasonable inference that the defendant is liable for
the misconduct alleged." *Id.* at 678. The plausibility
standard, however, does not require a showing of a "probability"
of misconduct, but it does demand more than a "sheer possibility
that a defendant has acted unlawfully." *Id.*

A well-pleaded complaint may survive a motion to
dismiss even where "it strikes a savvy judge that actual proof
of those facts is improbable, and that a recovery is very remote
and unlikely." *Twombly*, 550 U.S. at 556 (citation and internal
quotation marks omitted). This is because the court's function
is "not to weigh the evidence that might be presented at trial

but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985).

In conducting such an assessment on a Rule 12(b)(6) motion to dismiss, courts must "'accept as true all allegations in the complaint and draw all reasonable inferences in favor of the non-moving party.'" *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir. 2008) (citation omitted); *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 321 (2d Cir. 2010). Further, courts may consider "the full text of documents that are quoted in the complaint or documents that the plaintiff either possessed or knew about and relied upon in bringing the suit." *Holmes v. Air Line Pilots Ass'n*, 745 F. Supp. 2d 176, 193 (E.D.N.Y. 2010) (internal quotations marks omitted). Courts may also "consider matters of which judicial notice may be taken under Fed. R. Evid. 201." *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991).

This liberal pleading standard is modified by Rule 9(b), which requires a plaintiff asserting fraud claims to meet a heightened pleading standard. While Rule 8(a) usually requires only a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a), a plaintiff asserting fraud must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P.

7

9(b). Rule 9(b) is satisfied when the complaint specifies "the time, place, speaker, and content of the alleged misrepresentations;" alleges how the misrepresentations were fraudulent; and provides the details that "'give rise to a strong inference that the defendant[ ] had an intent to defraud, knowledge of the falsity, or a reckless disregard for the truth.'" *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013) (quoting *Caputo v. Pfizer, Inc.*, 267 F.3d 181, 191 (2d Cir. 2001)).

However, under Rule 9(b) "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Nonetheless, "plaintiff[s] must allege facts that give rise to a strong inference of fraudulent intent." *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 198 (2d Cir. 2013) (citation omitted); *see also Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 52 (2d Cir. 1995). The inference of fraudulent intent "may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290-91 (2d Cir. 2006) (citation omitted).

## II.  __Defendants' Motions to Dismiss__

In addition to Defendants' motions to dismiss and
Plaintiffs' oppositions thereto, (Pls.' Mem. of Law in Opp. to
Principal Trust's Mot. to Dismiss ("Pls.' Opp. to Principal
Trust Mot."), ECF No. 123; Pls.' Mem. of Law in Opp. to DLA's
Mot. to Dismiss ("Pls.' Opp. to DLA Mot."), ECF No. 122), the
court has also reviewed the exhibits attached to the parties'
motions.  (Decl. of Kristin Camp in Support of Principal Trust
Mot. ("Camp Decl."), ECF No. 126; Decl. of Kenneth I. Schacter
in Support of DLA Mot. ("Schacter Decl."), ECF No. 118, Decl. of
L. Timothy Fisher in Support of Pls' Opps. ("Fisher Decl."), ECF
No. 124.)  In particular, the court has considered all of the
documents in the Application Booklet for a "Traditional,
Rollover, Roth, or SEP Individual Retirement Account"
("Application Booklet" or "IRA Documents").[3]  (Camp Decl. Exh.
A.)  Defendants contend, and Plaintiffs do not dispute, that
Plaintiffs possessed the documents comprising the Application
Booklet and relied upon them in bringing this suit.  (Principal
Trust Mot. at 1.)  Additionally, the Complaint frequently quotes
the SIRTA.  (*See* Compl. ¶¶ 1-2, 17-22.)  Accordingly, the court

---

[3] The Application Booklet includes the following documents: (1) Privacy
Notice; (2) Application for Traditional, Rollover, Roth, or SEP IRA; (3) Form
5305-SEP ("Application"); (4) IRA Instructions; (5) Internal Revenue Service
Opinion Letter; (6) Disclosure Statement for SIRTAs; (7) SIRTA; (8) Schedule
of Trustee Fees.  (Camp Decl. Exh. A.)

may properly consider the Application Booklet in deciding Defendants' motions.

As an initial matter, the court finds that Plaintiffs have adequately demonstrated standing under Article III of the Constitution. Plaintiffs allege that Principal Trust caused "significant damages" to Plaintiffs and the alleged class, including the amount of trustee fees paid for the years when Principal Trust allegedly failed to perform its contractual duty to provide annual fair market valuations of, and reports regarding, the Apple REIT securities.[4] (*See* Compl. ¶ 19.) Principal Trust does not dispute that Plaintiffs paid trustee fees and that Principal Trust had a contractual relationship with Plaintiffs. Consequently, Plaintiffs have adequately alleged that they did not receive the benefit of their bargain, an injury traceable to Principal Trust that is likely redressable in this suit, and the court finds that Plaintiffs have sufficient standing to pursue their claims in federal court. *See, e.g.*, *Fleisher v. Phoenix Life Ins*. *Co.*, 997 F. Supp. 2d 230, 237-38 (S.D.N.Y. 2014) (*citing Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992)) (failing to dismiss breach of contract claims on standing grounds when plaintiff

---

[4] The Complaint also alleges that Plaintiffs and the alleged class incurred damages, because "individual members of the class *would have* to retain costly appraisers to determine the fair market value of the Apple REITs." (Compl. ¶ 30) (emphasis added.) Plaintiffs state more definitively in their Opposition that "some Class Members have had to retain costly appraisers." (Pls.' Opp. at 7.)

adequately alleged that he did not receive the benefit of his
bargain).

### A. Choice-of-Law

When "a case [has been] transferred from one federal
jurisdiction to another at the behest of the defendant pursuant
to 28 U.S.C. § 1404, a transferee court applies the substantive
state law, including choice-of-law rules, of the jurisdiction in
which the action was filed." *Valley Juice Ltd., Inc. v. Evian
Waters of France, Inc.*, 87 F.3d 604, 607 (2d Cir. 1996)
(internal quotations and citations omitted); *see also Johnson v.
Nextel Commc'ns, Inc.*, 660 F.3d 131, 137-38 (2d Cir. 2011)
(applying choice of law rules of state law that would have
governed had there been no change of venue).

Thus, for the purposes of deciding the instant motion,
the court applies Nevada law to the choice of law issues before
the court.  With respect to Plaintiffs' breach of contract
claims, the court agrees with the parties that Delaware
substantive law applies.  (*See* Principal Trust Mot. at 16-17;
Pls.' Opp. to Principal Trust Mot. at 17.)  Under Nevada law,
"[i]t is well settled that parties are permitted to select the
law that will govern the validity and effect of their contract."
*Engel v. Ernst*, 724 P.2d 215, 216 (Nev. 1986); *see also Rose v.
Chase Manhattan Bank USA*, No. 3:05-cv-00522, 2006 WL 1520238, at
*2 (D. Nev. May 30, 2006) (applying Nevada choice of law

analysis and finding that Delaware law governed contract claims, because it was designated as the choice of law in the agreement).

With respect to Plaintiff's tort claims, "the most significant relationship test, as provided in the Restatement (Second) of Conflict of Laws section 145, should govern the choice-of-law analysis in tort actions unless a more specific section applies to the particular tort claim." *Gen. Motors Corp. v. Eighth Judicial Dist. Court of the State of Nev.*, 134 P.3d 111, 113 (Nev. 2006). Section 145 of the Second Restatement identifies the following factors as relevant to conducting the choice of law analysis in tort actions:

> (a)  the place where the injury occurred,
> (b)  the place where the conduct causing the injury occurred,
> (c)  the domicil, residence, nationality, place of incorporation and place of business of the parties, and
> (d)  the place where the relationship, if any, between the parties is centered.

Restatement (Second) of Conflict of Laws § 145 (1971).

Specifically with respect to claims of fraud and misrepresentation, the court should consider:

> (a)  the place, or places, where the plaintiff acted in reliance upon the defendant's representations,
> (b)  the place where the plaintiff received the representations,
> (c)  the place where the defendant made the representations,

> (d) the domicil, residence, nationality, place of incorporation and place of business of the parties,
>
> (e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and
>
> (f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant.

Restatement (Second) of Conflict of Laws § 148 (1971).

Although the Plaintiffs and Principal Trust both assert that it is too early for the court to conduct the foregoing fact-intensive choice-of-law analysis for Plaintiffs' tort claims, Plaintiffs and Principal Trust rely on Delaware law in making their arguments for the purposes of this motion. (*See* Principal Trust Mot. at 18-19; Pls.' Opp. to Principal Trust Mot. at 17.) Given that (1) the Plaintiffs base their tort claims on violations of Delaware statutes (*see* Compl. ¶¶ 53, 58, 62, 63), (2) Principal Trust is a Delaware corporation that is headquartered in Delaware, (3) the duties that Plaintiffs allege were breached by Principal Trust arise from acts and omissions under the agreement which is governed by Delaware law, and (4) Plaintiffs and Principal Trust have agreed to apply Delaware law for the purposes of this motion, the court finds that Delaware has the most significant relationship to the occurrence and the

relevant parties, Principal Trust and Plaintiffs, and applies Delaware law to Plaintiffs' tort claims against Principal Trust.[5]

The court applies New York law to Plaintiffs' misrepresentation claims against DLA. DLA is a New York corporation that is headquartered in New York; the sales of Apple REITs to customers holding IRA accounts either occurred at DLA's offices in New York or at the direction of its management, which is located in New York; and the customer agreements were drafted by DLA in New York, were signed by DLA in New York, and upon execution by the customers, were returned to DLA's headquarters in New York. (*See* Order on Mot. to Transfer, ECF No. 76.) Plaintiffs' negligence, breach of fiduciary duty, and aiding and abetting fiduciary duty claims against DLA are derivative of their claims against Principal Trust. Consequently, the claims against DLA are analyzed as a matter of Delaware law. *See infra* pp. 31-33. The court also notes that analysis under Nevada and New York law yields the same results.

---

[5] In *Burns v. Delaware Charter Guarantee & Trust Co.*, a case where the claims also arose out of a Self-Directed IRA, the court applied the law of the states where the plaintiffs resided to the alleged tort claims, because those states "represent the locus of the harm." *See* 805 F. Supp. 2d 12, 22-23 (S.D.N.Y. 2011). Here, the Plaintiffs reside in Nevada, but allege no claims under Nevada law in their Complaint. In any case, the court does not find that application of Nevada law would yield different outcomes with respect to Plaintiffs' tort claims against Principal Trust, and conducts a parallel analysis of Plaintiffs' tort claims under Nevada law.

## B. Plaintiffs Have Failed to Allege A Breach of Contract Claim Against Principal Trust

Plaintiffs allege that Principal Trust breached its contract with Plaintiffs by failing to provide annual fair market valuations and status reports regarding the Apple REITs. (*See* Compl. ¶¶ 23, 25-26.) In support of their breach of contract claims, Plaintiffs rely on Articles 5.5(N) and 5.8(L) of the SIRTA. Article 5.5(N) states:

> Within ninety (90) days from the close of each Trust Year, the Trustee shall render an accounting, valuing the assets at fair market value, to the Account Holder. The accounting may consist of copies of regularly issued broker-dealer statements to the Trustee and copies of mutual fund, insurance company, and other investment summary account statements supplied to the Trustee. The Account Holder must file any exceptions or objections to the accounting with the Trustee in writing, within (60) days of the mailing of such accounting. In the absence of such filing, the Account Holder shall be deemed to have approved such account; and in such case, or upon the written approval of the Account Holder of any such account, the Trustee shall be released, relieved and discharged with respect to all matters and things set forth in such account as though such account had been settled by the decree of a court of competent jurisdiction. No person other than the Account Holder may require an accounting or bring any action against the Trustee with respect to the Trust or its actions as Trustee.

(Camp Decl. Exh. A, Art. 5.5(N).) Article 5.8(L) states:

> The Trustee shall furnish annual calendar-year reports concerning the status of the Account and such information concerning required minimum distribution as is prescribed by the Commissioner of Internal Revenue.

(Camp Decl. Exh. A, Art. 5.8(L).)

Principal Trust contends that Plaintiffs' breach of contract claims fail, because (1) the plain language of the IRA Documents demonstrates that Principal Trust had no duty to provide an independent accounting valuing the Apple REITs at fair market value; and (2) Plaintiffs' waived their claims, because they failed to object within 60 days of "the mailing of [the] accounting" as required by the SIRTA.

In support of its position, Principal Trust cites the IRA Instructions regarding fair market valuations, which provides:

> As a non-depository directed trustee, we are required to submit the December 31 fair market value of your account to the Internal Revenue Service each year. We request this information annually from your brokerage/investment firm and provide it to the IRS. In the event that we do not receive the fair market value of your account, we will not submit a value for your account to the IRS. You will not be notified that we did not receive this information from your brokerage/investment firm. We strongly recommend that you carefully monitor your account at all times and contact your brokerage/investment firm if you do not receive a statement with the December 31 fair market value of your account by January 31.
>
> Principal Trust Company may not receive accurate market values for certain types of investments, particularly limited partnerships and private placement investments. A valuation of zero may be reflected for these investments when we do not receive a value from the investment sponsor, when the investment sponsor reports the investment as having no market value, or if the investment sponsor is in bankruptcy.

(Camp Decl. Exh. A, Instructions, Section 4-2.)

### 1. <u>Legal Standard for Breach of Contract Claims</u>[6]

Under Delaware law, interpreting the language of a contractual provision is a question of law. *Pellaton v. Bank of New York,* 592 A.2d 473, 478 (Del. 1991). The court's analysis must focus on determining the intent of the parties. *See E.I. du Pont de Nemours & Co. v. Shell Oil Co.,* 498 A.2d 1108, 1113 (Del. 1985). The initial question is "whether or not the contractual language is ambiguous." *E.I. du Pont de Nemours & Co. v. Admiral Ins. Co.*, 711 A.2d 45, 56-57 (Del. Super. Ct. 1995). An ambiguity exists when the contractual provisions are "reasonably or fairly susceptible" of different interpretations or two different meanings. *Rhone-Poulenc Basic Chems. Co. v. Am. Motorists Ins. Co.,* 616 A.2d 1192, 1196 (Del. 1992). Both interpretations must be reasonable readings of the provision's text. *See Axis Reins. Co. v. HLTH Corp.*, 993 A.2d 1057, 1062 (Del. 2010). Delaware law is clear that a motion to dismiss can only be granted when the relevant contract terms are unambiguous

---

[6] The court notes the Principal Trust and the Plaintiffs have agreed to resolve disputes through binding arbitration. (*See* Camp Decl. Ex. A, Art. 5.8(G).) However, neither party has invoked the arbitration clause. Notwithstanding the strong federal policy favoring arbitration, *see Ragone v. Atl. Video at Manhattan Ctr.,* 595 F.3d 115, 121 (2d Cir. 2010), the court has no authority to enforce *sua sponte* an arbitration provision, *see Amiron Dev. Corp. v. Sytner,* No. 12-cv-3036, 2013 WL 1332725, at *3 (E.D.N.Y. Mar. 29, 2013); *In re Arbitration Between Standard Tallow Corp. & Kil-Mgmt. A/S,* 901 F. Supp. 147, 151 (S.D.N.Y. 1995); *Suchodolski Assocs., Inc. v. Cardell Fin. Corp.,* Nos. 03-CV-4148, 04-CV-5732, 2006 WL 10886, at *4 (S.D.N.Y. Jan. 3, 2006).

and deciding the motion would not require the court to choose between two reasonable interpretations of the contract. *See VLIW Tech. LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 615 (Del. 2003) ("In deciding a motion to dismiss, the trial court cannot choose between two differing reasonable interpretations of ambiguous provisions.").

In Delaware, the terms of another instrument may be incorporated by reference into an agreement "if a reading of all documents together gives evidence of the parties' intention and the other terms are clearly identified." *Realty Growth Investors v. Council of Unit Owners*, 453 A.2d 450, 454 (Del. 1982). Apart from the explicit incorporation by reference of one document into another, "the principle that all writings which are part of the same transaction are interpreted together" may be applied when, "in the absence of anything to indicate a contrary intention, instruments executed at the same time, by the same contracting parties, for the same purpose, and in the course of the same transaction will be considered and construed together as one contract or instrument." *Simon v. Navellier Series Fund*, No. 17734, 2000 WL 1597890, at *7 n.33 (Del. Ch. Oct. 19, 2000) (quoting 11 Williston, Contracts § 30:36 (4th ed. 1999)); *see also* Restatement (Second) of Contracts § 202(2)(1981) ("A writing is interpreted as a whole, and all

writings that are part of the same transaction are interpreted together.").

    2. <u>Application</u>

      Based on a careful review of the IRA Documents, including the SIRTA, the court finds that the contractual language here is unambiguous. Under the only "reasonable or fairly susceptible" interpretation of the parties' agreement, Principal Trust was not required to conduct an independent accounting of the Apple REITs at fair market value nor independently verify that the broker's accounting provided an accurate fair market valuation.

      First, SIRTA Article 5.5(N) states that "the Trustee shall render an accounting, valuing the assets at fair market value, to the Account holder." (Camp Decl. Exh. A, Art. 5.5(N).) In the following sentence, Article 5.5(N) clarifies that "[t]he accounting may consist of copies of regularly issued broker-dealer statements to the Trustee and copies of mutual fund, insurance company, and other investment summary account statements supplied to the Trustee." (*Id.*) Thus, Plaintiffs agreed in Article 5.5(N) that the Trustees' rendering of an annual accounting "valuing the assets at fair market value" could be satisfied by providing copies of the broker-dealer statements.

Additionally, the IRA Documents include Instructions expressly stating that "for certain types of investments, particularly limited partnerships and private placement investments," Principal Trust "may not receive accurate market values" or "[a] valuation of zero may be reflected."  Giving consideration to the plain language of Article 5.5(N) and the IRA Instructions, the only reasonable interpretation of Article 5.5(N) is that Principal Trust satisfied its duty to "render an accounting, valuing the assets at fair market value," by providing Plaintiffs with DLA's regularly-issued statements which sometimes listed no valuation or valuations that were not based on a fair market valuation for the Apple REITs.

Plaintiffs contend that the IRA Instructions are not considered a "controlling document" but cite no Delaware law to support their contention.  (Pls.' Opp. to Principal Trust Mot. at 19-20.)  Indeed, as set forth above, Delaware law permits all writings that are part of the same transaction to be "interpreted together."  Restatement (Second) of Contracts § 202(2)(1981).  The Plaintiffs do not dispute they received the IRA Instructions as part of the Application Booklet, in the same transaction as when they received the SIRTA and signed the Application.  Given that the other writings that are part of this transaction indicate no contrary intention, the IRA Instructions are properly "considered and construed together as

one contract or instrument, even though they do not in terms refer to each other." *See Simon*, 2000 WL 1597890, at *7 n.33 (quoting 11 Williston, Contracts § 30:36 (4th ed. 1999)).

Plaintiffs also argue that Principal Trust breached Article 5.8(L) of the SIRTA which requires Principal Trust to "furnish annual calendar-year reports concerning the status of the Account and such information concerning required minimum distribution as is prescribed by the Commissioner of Internal Revenue." (Camp Decl. Exh. A, Art. 5.8(L).) The only reasonable interpretation of this contract provision is that Principal Trust agreed to satisfy its reporting requirements to the IRS and investors under IRC § 408(i) and the relevant regulations.[7] *See, e.g.*, 26 C.F.R. 1.408-2; 26 C.F.R. 1.408-5. Plaintiffs' Complaint fails to make sufficient factual allegations to state a claim that Principal Trust violated its reporting obligations "as prescribed by the Commissioner of Internal Revenue." (Camp Decl. Exh. A, Art. 5.8(L).)

Nowhere in the Complaint do Plaintiffs allege that "various scenarios such as Roth IRA conversions or required minimum distributions" (Compl. ¶ 32) occurred that triggered the requirement that Principal Trust provide reports as required by

---

[7] Article 5.5(N) clearly states that the accounting should be rendered "to the Account Holder" whereas Article 5.8(L) fails to specify to whom these annual account status reports should be furnished. (*Compare* Camp Decl. Exh. A, Art. 5.5(N) *to* Camp Decl. Exh. A, Art. 5.8(L).) Indeed, many of the Treasury Regulations to which Plaintiffs cite only require reporting to the IRS.

the IRC and its relevant regulations. *See, e.g.*, IRC § 408(i) ("The trustee of an individual retirement account . . . shall make such reports regarding such account, contract, or annuity to the Secretary and to the individuals for whom the account, contract or annuity is, or is to be, maintained with respect to contributions (and the years to which they relate), distributions aggregating $10 or more in any calendar year, and such other matters as the Secretary may require."). Plaintiffs fail to allege that they directed Roth IRA conversions, or received minimum distributions, or otherwise experienced any of the scenarios that might necessitate Principal Trust's reporting requirements.

The Complaint makes one allegation in support of its claim of a breach of SIRTA Article 5.8(L) that is not wholly conclusory:[8]

> Principal did not determine any valuation, fair market value or otherwise, for the Apple REITs, and thus could not provide the reports and information prescribed by the Commissioner of Internal Revenue, who requires very specific and accurate pieces of information. Providing an inaccurate report or no report at all constitutes a breach of contract by Principal since the Trust Agreement provision requires

---

[8] The other allegations in the Complaint that the court construes as attempts to allege breaches of SIRTA Article 5.8(L) are so vague and conclusory that they are insufficient to state a plausible claim under *Iqbal*, 556 U.S. at 678-79. (*See* Compl. ¶ 3 ("Defendants have failed to make the valuations and provide the required reports and information each and every year since Plaintiffs and the Class made their investments in the REITs."); Compl. ¶ 49 ("Principal materially breached the Trust Agreement by not providing the valuations, reports and information required by the contract.").)

> the Trustee to provide such reports as "prescribed by
> the Commissioner of Internal Revenue."

(Compl. ¶ 33.) Essentially, Plaintiffs allege that the broker-generated reports that Principal Trust furnished fail to satisfy the requirements of the Internal Revenue Code, because they did not include fair market valuations of the Apple REITs. To support their claim, Plaintiffs cite (1) 26 C.F.R. § 1.408-2(e)(5)(ii)(E); (2) an IRS Interpretive letter from John G. Riddle, Jr., dated February 24, 1993; and (3) a notice included in the IRS instructions for Form 1099-R and 5498.[9] (Pls.' Opp. to Principal Trust Mot. at 5-6; 15-16.)[10]

The court finds Plaintiffs' arguments unavailing. First, although 26 C.F.R. § 1.408-2(e)(5)(ii)(E) states that "[t]he applicant will determine the value of the assets held by it in trust at least once in each calendar year . . ." and "[t]he assets will be valued at their fair market value," Plaintiffs fail to allege that Principal Trust is an "applicant"

---

[9] The court properly considers the Treasury Regulations and the IRS Instructions for Form 1099-R and 5498, because they are cited in the Complaint and are expressly incorporated by paragraph 22 of the Complaint. *See Sira v. Morton,* 380 F.3d 57, 67 (2d Cir. 2004) (noting that a court deciding a Rule 12(b)(6) motion may consider all documents included in the complaint whether by attachment, through incorporation by reference, or because the documents are integral to the pleading).

[10] As an initial matter, the court agrees with other courts in this circuit that IRC § 408 does not give rise to any independent private right of action or actionable duties, and any action based on such a claim is frivolous. *See Burns v. Delaware Charter Guarantee & Trust Co.*, 805 F. Supp. 2d 12, 19 (S.D.N.Y. 2011) (citing *Sirna v. Prudential Secs., Inc.*, No. 95 Civ. 8422, 95 Civ. 9016, 96 Civ. 4534, 1997 WL 53194, at *2 (S.D.N.Y. Feb. 10, 1997) (analyzing legislative intention and determining that IRC § 408 does not imply private rights of action). Consequently, to the extent that Plaintiffs allege independent causes of action under IRC 408, they are dismissed.

as defined 26 C.F.R. § 1.408-2(e).  The court agrees with
Principal Trust that under a plain reading of the Treasury
regulations, sub-section (e) of 26 C.F.R. § 1.408-2 applies only
to applicant trustees that are not banks.  *See* 26 C.F.R. §
1.408-2(e)(1)("The trustee of a trust described in paragraph (b)
of this section may be a person other than a bank if the person
demonstrates to the satisfaction of the Commissioner that the
manner in which the person will administer trusts will be
consistent with the requirements of section 408.  The person
must demonstrate by written application that the requirements of
paragraph (e)(2) to (e)(6) of this section are met."); *Grant v.
Pensco Trust Co.*, No. 12-cv-6084, 2014 WL 1471054, at *3 (N.D.
Cal. Apr. 15, 2014) ("26 C.F.R. 1.408-2(e)(5)(ii)(E) does not
impose on SDIRA custodians a duty to perform a fair market
valuation of the SDIRAS because . . . it only required those
*applying* to be trustees to perform a fair market valuation of
all the assets held in trust, not each individual self-directed
IRA.") (emphasis added).  Plaintiffs do not allege that
Principal Trust is a non-bank applicant trustee under 26 C.F.R.
§ 1.408-2(e), nor do they dispute that Principal Trust is a bank
under 26 U.S.C. § 408(n).  Thus, Principal Trust was not
required to perform an independent fair market valuation
pursuant to pursuant to 26 C.F.R. 1.408-2(e)(5)(ii)(E) as
Plaintiffs contend.

Plaintiffs further contend that a February 24, 1993 IRS Interpretive letter by an Acting Chief of Employee Plans[11] makes clear that "the responsibility to provide a valuation is not waivable." (Pl.'s Opp. at 15.) Plaintiffs' reliance on the February 1993 Interpretive Letter is also misplaced. As an initial matter, the letter itself states that "[t]his is not a ruling, however, and may not be relied upon with respect to any specific transaction." (Fisher Decl., Exh. D, at 2.) Moreover, an August 6, 1993 IRS Interpretive letter states that "there are presently no specific guidelines (regulations, revenue procedures or otherwise) informing trustees how to satisfy the IRS's reporting requirements regarding the value of assets held by IRA's, and there are no specific definitions of FMV for the various underlying investments that must be used by the trustee or issuer in order to comply with IRS guidelines." (Camp Decl., Exh. 3, at 1.) As for reporting the fair market value of "investments that are not listed on a public exchange," (as is true with the Apple REITs in which Plaintiffs invested) the IRS letter advises that so long as the trustee reports the

---

[11] The court takes judicial notice of the IRS interpretive letters dated February 24, 1993, and August 6, 1993, pursuant to Fed. R. Evid. 201. *See, e.g., Sierra Club* v. *U.S. Army Corps of Eng'rs*, 732 F.2d 253, 258 (2d Cir. 1984) (finding no abuse of discretion when district court took judicial notice of a letter by a "middle-level [Federal Highway Administration] administrator"); *Estate of Axelrod v. Flannery*, 476 F. Supp. 2d 188, 201 (D. Conn. 2007) ("[C]ourts that consider matters of public record in a Rule 12(b)(6) motion are limited to things such as . . . letter decisions of government agencies, published reports, records of administrative agencies, or pleadings in another action.").

information that it receives, "it is under no obligation to appraise the investment independently." (Camp Decl., Exh. 3, at 2.) The court finds that the February 1993 IRS Interpretive letter cited by Plaintiffs, which has no precedential value and is clarified by another IRS Interpretive letter issued six months later, is insufficient to support Plaintiffs' breach of contract allegation. *See Grant*, 2014 WL 1471054, at *4 (finding that plaintiff's argument that the February 1993 IRS Interpretive Letter imposes a duty on defendant "to ascertain the fair market value of" plaintiff's self-directed IRA "is wrong").

Similarly, Plaintiffs' reference to the IRS Instructions for Form 1099-R and 5498 is misplaced. These instructions for forms that are submitted to the IRS, the persuasive value of which is minimal in the context of this motion, were not included in the documents that Principal Trust provided to Plaintiffs when they entered into their agreement and thus do not create enforceable contract rights or undermine IRA Instructions which expressly state that investors "may not receive accurate market values for certain types of investments, particularly limited partnerships and private placement investments." (Camp Decl. Exh. A, Instructions, Section 4-2.) *See Hines v. FiServ, Inc.*, No. 808-CV-2569-T-30AEP, 2010 WL 1249838, at *3 (M.D. Fla. Mar. 25, 2010) (defendant did not

breach duty to report "accurate value" of holdings to customers and IRS, when the "valuation reporting policy of the IRA contract states that [defendant] reports the values of illiquid investments . . . at the original offering price or the values provided to [defendant]" by a third-party).

In support of their breach of contract claim, Plaintiffs rely on *Grund v. Delaware Charter Guarantee & Trust Co.*, in which the district court found that plaintiffs adequately alleged a breach of contract claim. 788 F. Supp. 2d 226, 246 (S.D.N.Y. 2011). In *Grund*, however, the plaintiffs alleged that the required accounting statements were not sent to Plaintiffs, but instead were sent directly to a third-party who was operating a Ponzi scheme and that plaintiffs never received them. *Id*. Here, Plaintiffs do not allege that they never received the accounting statements, but instead allege that the broker-generated statements they received did not include fair market valuations. (*See* Compl. ¶¶ 22-28.) Consequently, the factual allegations for the claims before this court are distinguishable from those in *Grund.*

For the foregoing reasons, Plaintiffs' breach of contract claims against Principal Trust are dismissed.[12]

---

[12] Given that the court finds Plaintiffs failed to adequately allege a breach of contract, the court does not reach the question of whether Plaintiffs waived their claims by failing to object to the broker statements under the contract.

**C. Plaintiffs' Breach of Fiduciary Duty and Breach of Trust Claims Against Defendants Fail as a Matter of Law**

Plaintiffs allege that Principal Trust breached its fiduciary duties and trustee duties under Title 12 of the Delaware Code. (*See* Compl. ¶¶ 51-64.) As an initial matter, Plaintiffs have failed to cite any authority for their claim that self-directed IRAs constitute trusts governed by Title 12 – "Decedents' Estates and Fiduciary Relations" – of the Delaware Code. *See* Del. Code Ann., tit. 12. Several federal courts have found that self-directed IRAs do not constitute trusts under state law and, accordingly, IRA trustees do not owe duties of care independent from the duties defined in their trust agreements. *See, e.g.*, *Mandelbaum v. Fiserv, Inc.*, 787 F. Supp. 2d 1226, 1240-41 (D. Colo. 2011) (finding that Colorado trust statutes do not govern the IRA and "that Defendants' at-issue duties of care do not have an existence independent of the IRA Agreements, themselves"); *Hines*, 2010 WL 1249838, at *3 ("IRC § 408(h) recognizes that custodial IRAs, such as the Plaintiffs' accounts here, are not trusts. They are only treated as trusts for tax deferral purposes. Courts applying this section of the code in relation to custodial IRA accounts have held that IRC § 408 and the corresponding regulations do not create any fiduciary or other duties of care.") (internal citations omitted); *Matkin v. Fidelity Nat'l Bank*, No. Civ.A. 6:01-2189-

24, 2002 WL 32060182, at *3 (D.S.C. July 11, 2002) ("Plaintiff has failed to demonstrate that the appearance of the term 'trustee' in § 408(h) supersedes the custodial agreement and imposes a duty of care on Defendant beyond properly maintaining the [self-directed IRA].").

In *Grund v. Delaware Charter Guarantee & Trust Co.*, the court acknowledged that custodial, non-discretionary IRAs do not impose fiduciary duties upon the trustees and are not trusts for any other purpose but taxes. 788 F. Supp. 2d 226, 249 n.7 (S.D.N.Y. 2011) (citing *Hines*, No. 808-CV-2569-T-30AEP, 2010 WL 1249838, at *2-3). The court, nonetheless, found that the plaintiffs adequately alleged that defendants owed fiduciary duties, because the complaint alleged that the defendants acknowledged in the "various IRA account documents and other written materials" that they had "fiduciary obligations to monitor and safeguard the investments" of the plaintiffs. *Id.* at 249. Here, the IRA documents do not suggest that Principal Trust had any fiduciary obligations to monitor and safeguard the investments beyond the duties delineated in the IRA documents. If anything, the language in the IRA documents suggests that Principal Trust does not owe any fiduciary duties. (*See, e.g.*, Camp Decl. Ex. A, Section 2-2, Application) ("I understand Principal Trust Company is not an investment advisor and does not supervise or control my Investment representative.

Principal Trust Company does not endorse any particular
investment.  I agree to use independent judgment in making my
investment decisions.")  Consequently, the court finds that
Plaintiffs have failed to allege that Principal Trust owes any
fiduciary or trust duties beyond the duties specified the
parties' agreement.

Additionally, "any fiduciary claims arising out of the
same facts that underlie the contract obligations would be
foreclosed as superfluous."  *Nemec v. Shrader*, 991 A.2d 1120,
1129 (Del. 2010); *see also Blue Chip Capital Fund II Ltd. P'ship
v. Tubergen*, 906 A.2d 827, 833-34 (Del. Ch. 2006) (dismissing
fiduciary claims that arose from same alleged facts and
underlying conduct as contractual claims); *Gale v. Bershad*, No.
CIV.A. 15714, 1998 WL 118022, at *5 (Del. Ch. Mar. 4, 1998)
(dismissing breach of fiduciary claim as redundant after
determining the duty to be enforced was contractual); *Lake at
Las Vegas Investors Grp., Inc. v. Pac. Malibu Dev. Corp.*, 867 F.
Supp. 920, 924 (D. Nev. 1994) (dismissing breach of fiduciary
duty claim, because "[a]ny breach of that fiduciary duty is a
breach of the contract as well.")

Here, Plaintiffs allege that "Principal breached its
fiduciary duties to Plaintiffs and the Class by failing to
perform its duties under the Trust Agreement as well as its
failure to provide the valuations, reports and information

required by law." (Compl ¶ 61.) As discussed above, because there is no private right of action under § 408 of the IRC, Plaintiffs' breach of fiduciary duty claims are based entirely upon the same alleged contractual breach and are therefore "foreclosed as superfluous." Similarly, Plaintiffs fail to specify any breach of trust independent from the alleged breach of contract in their Complaint.[13]

Given that Plaintiffs' breach of fiduciary duty claims against Principal Trust fail as a matter of law, Plaintiffs' breach of fiduciary duty and aiding and abetting breach of fiduciary duty claims against DLA must also fail, because the fiduciary duty related claims against DLA are entirely derivative of the claims against Principal Trust. Plaintiffs allege that DLA "owes a fiduciary duty to Plaintiffs and members of the Class when performing duties as an agent of the Trustee." (Compl. ¶ 68.) As set forth above, Plaintiffs have not adequately alleged that Principal Trust owed any fiduciary duties to Plaintiffs, and thus their alleged agents cannot be held liable for a breach of fiduciary duty.[14] Similarly, Plaintiffs' aiding and abetting breach of fiduciary claims against DLA fail, because Plaintiffs have not alleged any

---

[13] Plaintiffs allege that "Principal's failure to abide by the terms of the Trust Agreement and other acts of commission or omission constitute breaches of trust." (Compl. ¶ 54.)

[14] The court need not and does not reach the issue of whether Plaintiffs adequately alleged that DLA was an agent of Principal Trust.

underlying breach of fiduciary duty against Principal Trust or DLA.

### D. Plaintiffs' Negligence and Misrepresentation Claims Against Defendants Fail as a Matter of Law

Plaintiffs allege that Defendants breached their duty of ordinary care to Plaintiffs by "failing to perform their duties under the Trust Agreement as well as their failure to provide the valuations, reports and information required by law." (Compl. ¶ 80.) Defendants move to dismiss this alleged breach on the ground that Plaintiffs claims are barred by the economic loss rule. (Principal Trust Mot. at 26; DLA Mot. at 25.)

Given that Plaintiffs have failed to allege that Principal Trust owes any duties to Plaintiffs independent of the agreement, the court finds that Plaintiffs' negligence claims are coextensive with its breach of contract claims, and Plaintiffs are not entitled to seek relief under a negligence claim. *See, e.g.*, *Midland Red Oak Realty, Inc. v. Friedman, Billings & Ramsey & Co.*, No. CIV.A.04C05091, 2005 WL 445710, at *3 (Del. Super. Ct. Feb. 23, 2005) ("As a general rule under Delaware law, where an action is based entirely on a breach of the terms of a contract between the parties and not on a violation of an independent duty imposed by law, a plaintiff must sue in contract and not in tort."); *Thomas v. Harford Mut.*

*Ins. Co.*, No. 01C-01-046 HDR, 2003 WL 21742143, at *2 (Del. Super. Ct. July 25, 2003) (dismissing negligence claims because defendant's duty was coextensive with contractual obligations); *Williams v. Univ. Med. Ctr. of So. Nev.*, 688 F. Supp. 2d 1134, 1145 (D. Nev. 2010) (citing *Bernard v. Rockhill Dev. Co.*, 734 P.2d 1238, 1240 (1987)) ("Because negligence is a tort, the breach must be a violation of a duty imposed by law independent of a breach of a contractual duty."). Moreover, because Plaintiffs' negligence claims against DLA stem from its alleged relationship as an agent to Principal Trust, the court also dismisses Plaintiffs' negligence claims against DLA.

Plaintiffs' negligent and intentional misrepresentation claims against Principal Trust and DLA also fail as a matter of law, because breach of contract claims cannot be "bootstrapped into a fraud claim." *Midland Red Oak Realty,* No. CIV.A.04C05091, 2005 WL 445710, at *3. Again, Plaintiffs' misrepresentation claims against Principal Trust are based entirely on alleged obligations owed by Principal Trust under their contractual agreement. (*See* Compl. ¶¶ 86, 96.)

Furthermore, under Delaware, Nevada, and New York law, fraud claims require justifiable or reasonable reliance. *See H-M Wexford LLC v. Encorp, Inc.*, 832 A.2d 129, 142 (Del Ch. 2003) ("Justifiable reliance is an element of common law fraud, equitable fraud, and negligent misrepresentation under Delaware

law."); *Laidman v. Clark*, No. 2:11-cv-00704, 2013 WL 508169, at
*3 (D. Nev. Feb. 8, 2013) (quoting *Collins v. Burns*, 741 P.2d
819, 821) (Nev. 1987) ("Justifiable reliance also requires that
the plaintiff does not have information 'which would serve as a
danger signal and a red light to any normal person of his
intelligence and experience.'"); *Ashland Inc. v. Morgan Stanley
& Co., Inc.*, 652 F.3d 333, 339 ("Reasonable reliance is a
required element of common law fraud, promissory estoppel,
breach of fiduciary duty, and negligent misrepresentation under
New York law.")  Where, as here, the IRA documents contained
express disclaimers that investors may not receive accurate
market values for certain types of investments, Plaintiffs
cannot claim that their reliance is justifiable or reasonable.
*See, e.g.*, *H-M Wexford LLC*, 832 A.2d at 142 (dismissing
misrepresentation claims when documents contained an explicit
disclaimer "stating that the projections had not been reviewed
and no assurances were given with regard to the projections").

        Plaintiffs have also failed to plead adequately their
misrepresentation claims against DLA under Rule 9(b) of the
Federal Rules of Civil Procedure.  Plaintiffs allege that DLA
made the following statements on their account statements:

> a. "A market value will likely be determined upon a
> potential sale of the Apple REIT program(s) or their
> underlying assets or the listing of the units for
> trading on an exchange, although these events are

not certain to occur and the timing of these events cannot be predicted."

  b. "Apple REIT Units are not priced and we do not provide an estimated value."

  c. "The per unit price you paid for Apple REIT Units (either $10.50 or $11.00) does not represent a current market value."

  d. "REIT securities are generally illiquid and the value of the security may be different than its purchase price."

  e. "Accurate information about the value of the Apple REIT properties is not currently available."

(Compl. ¶ 26.)  Plaintiffs fail to allege plausible facts to explain why any of the foregoing statements constitute false representations.  *See Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993) (reading Rule 9(b) to require an explanation of why the statements were fraudulent).  If anything, these statements indicate DLA's candor about the fact that the price that Plaintiffs paid for the Apple REIT units did not represent a market valuation and that no fair market value was available.  *Cf. In re Apple REITs Litig.*, No. 11-cv-2919, 2013 WL 1386202, at *15 (E.D.N.Y. Apr. 3, 2013).

  **E. Plaintiffs' Request for Leave to Amend is Denied in Part and Granted in Part**

  "'[I]t is within the sound discretion of the district court to grant or deny leave to amend.'" *Wilson v. Merrill Lynch & Co.,* 671 F.3d 120, 139 (2d Cir. 2011) (quoting *McCarthy v. Dun & Bradstreet Corp.,* 482 F.3d 184, 200 (2d Cir. 2007)).  Plaintiffs have amended their complaint once and have not "indicated to the . . . court how further amendment would permit

[them] to cure the deficiencies in the complaint," nor have they "explained how they could cure the deficiencies that led to the dismissal of [their] complaint." *Id.; see* Pls.' Opp. to Principal Trust Mot. at 30; Pls.' Opp. to DLA Mot. at 29. "In the absence of any identification of how a further amendment would improve upon the Complaint, leave to amend must be denied as futile." *Bd. of Trs. of Ft. Lauderdale Gen. Empls. Ret. Sys. v. Mechel OAO,* 811 F. Supp. 2d 853, 883 (S.D.N.Y. 2011); *see also Wilson*, 671 F.3d at 140 (affirming denial of leave to amend due to lack of "some indication as to what appellant[ ] might add to [his] complaint in order to make it viable" (alterations in original)). Here, despite Plaintiffs' prior amendment and their current failure to indicate how further amendment could cure the deficiencies in their Complaint, in light of the Second and Third Circuit's general view that request for leave to amend should be granted when possible amendments could cure the complaint's deficiencies, the court grants Plaintiffs' request for leave to amend with respect to its breach of contract claim against Principal Trust for breach of SIRTA Article 5.8(L) in the event that Plaintiffs may be able to assert factual allegations that Principal Trust breached its reporting duties. *See, e.g., Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 347 Fed. App'x 617, 622 (2d Cir. 2009) ("Although courts commonly look to proposed amendments to determine futility, courts need

not determine futility based only on an assessment of the proposed amendments."); *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) ("[L]eave to amend generally must be granted unless the amendment would not cure the deficiency."); see *also* Fed. R. Civ. P. 15(a). Plaintiffs' request for leave to amend the complaint is denied as futile with respect to Plaintiffs' breach of contract claim against Principal Trust for breach of SIRTA Article 5.5(N) and the entirety of Plaintiffs' tort claims against Defendants.

## CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss are granted, and the court dismisses the Complaint in its entirety, with leave to replead only Plaintiffs' breach of contract claim against Principal Trust pursuant to SIRTA Article 5.8(L). Plaintiffs' (1) breach of SIRTA 5.5(N) claim against Principal Trust; (2) breach of trust claim against Principal Trust; (3) breach of fiduciary duty claim against Principal Trust; (4) breach of fiduciary duty claim against DLA; (5) aiding and abetting breach of fiduciary duty claim against DLA; (6) negligence claims against Principal Trust and DLA; (7) intentional misrepresentation claims against Principal Trust and DLA; and (8) negligent misrepresentation claims against Principal Trust and DLA are dismissed with prejudice. Plaintiffs' SIRTA Article 5.8(L) breach of contract claim

against Principal Trust is dismissed without prejudice.

Plaintiffs' must file their second amended complaint as to their

SIRTA Article 5.8(L) claim against Principal Trust by April 30,

2015.  The Clerk of the Court is respectfully directed to enter

judgment in favor of David Lerner Associates, Inc.

**SO ORDERED.**

Dated:    Brooklyn, New York
          March 31, 2015

                              _____ _/s/_____
                              KIYO A. MATSUMOTO
                              United States District Judge